**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DENISE MURRAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 13 C 2496** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **SHARON LITTLE, BERNESSA TATE,** | ) | |
| **PATRICK FITZGERALD, RICHARD** | ) | |
| **ELLITCH and JOSEPH WAYS, SR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff was fired from her job with the Cook County State's Attorney's office when she

failed to show up for a mandatory drug test. She claims that, although she was given written notice

of the test and she signed and dated that notice, she didn't actually read it – she merely folded it up

and stuck it in her pocket – and so didn't show up for the test. To plaintiff's way of thinking, that

wasn't her fault and she is entitled to redress for something that she could quite easily have

prevented from ever happening to her. More importantly, even though she was able to challenge the

decision to terminate her through a multi-stage grievance process that culminated in a hearing before

an *independent* arbitrator, who found her version of events not credible, she insists that she has

been deprived of due process of law.

Throughout every area of the law, of course, a party's choice to ignore a notice or not read

a contract works against themher. *See e.g.,Posey v. Skyline Corp.*, 702 F.2d 102, 106 (7th Cir.

1983)(plaintiff's claim that he never saw the notice at issue insufficient to stave off summary

judgment); *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801,809(7th Cir.

2011)("Ignorance of the contract's arbitration provision is no defense if they failed to read the contract before signing."); *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 811 (7th Cir. 1999)(rejecting claim that plaintiff had never seen employee handbook when she signed acknowledgment form); *Ho v. Donovan*, 569 F.3d 677, 681 (7th Cir. 2009)("At all events, fear that governments are up to no good is a reason to open notices and act to defend one's interests, not to ignore notices."); *Rios-O'Donnell v. American Airlines, Inc.*, 2013 WL 157610, 5 (N.D.Ill. 2013)(". . . failure to read these repeated notices is regrettable, but it does not give her a basis for a viable claim. . . ."). *See also Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999)(Easterbrook, J.)("Any other approach would undermine the validity of the written word and encourage people either to close their eyes (hoping that they can reap the benefits without incurring the costs and risks of the venture) or to come up with hard-to-refute tales of not reading or understanding the documents they sign.")(parenthesis in original); *Bennett v. Flanigan*, 220 F.2d 799, 802 (7th Cir. 1955).

But plaintiff – who is proceeding *pro se*[1] – was skilled and creative enough to morph her own intentional omission (if she is to believed) into a federal case where the defendants are accused of having deprived her of due process. She began by alleging that her former employer fired her because of a disability in violation of the Americans with Disabilities Act. When that didn't work out – Judge Feinerman dismissed her case – she charged her former employer and certain supervisory

---

[1] Plaintiff twice moved for court-appointed, free counsel before Judge Feinerman and was twice denied. [Dkt. ## 13, 43]. Of course, there is no right to counsel in a civil case, and when a party files a motion for recruitment of counsel, the questions to be asked are whether she is indigent and has made a reasonable effort to obtain counsel, and "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014). That is exactly the analysis Judge Feinerman undertook, first on July 25, 2003, and then again on December 16, 2013.

Plaintiff did not renewed her motion for recruitment of counsel after the case was transferred here by consent pursuant to 28 U.S.C. §636(c)(1).

personnel with denying her due process as a public employee. That complaint was not dismissed, and the defendants have moved for summary judgment.

While in certain contexts *pro se* plaintiffs are accorded a measure of latitude – often substantial, *see generally Stelmokas v. Kodzius*, 460 Fed.Appx. 600, 605 (7th Cir. 2012); Michael Fridkin and Rachel Brady, *Playing on an Uneven Field: Litigating Against a Pro Se Opponent*, The Circuit Rider 17 (May 2015) – they are not entitled to ignore the rules that bind all other litigants, *McNeil v. United States,* 508 U.S. 106, 113 (1993); *S.E.C. v. Spadaccini*, 256 Fed.Appx. 794, 795 (7th Cir.2007), and they most certainly are not entitled to a misapplication of legal principles in their favor because they are proceeding without counsel. Nonetheless, plaintiff's response to the motion for summary judgment has been considered with far greater latitude than had it been filed by a lawyer.

For example, none of the arguments that Plaintiff makes as to why the pretermination interview and post-termination hearings she fully participated in did not amount to due process are supported by citation to pertinent authority. Had they been made by a lawyer, they would be deemed waived. *Bass v. Joliet Public School Dist. No. 86*, 746 F.3d 835, 841 n.1 (7th Cir. 2014); *United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir.2011); *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir.2009). Nonetheless, all of her skeletal, perfunctory arguments, and accusations are addressed.

## I.
## Facts

### A.

As always, the facts underlying this summary judgment proceeding are drawn from the parties' Local Rule 56.1 submissions. "For litigants appearing in the Northern District of Illinois,

the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). Even *pro se* litigants must comply with the local rules, *Whitmore v. Boelter Brands*, 576 Fed.Appx. 609, 610 (7th Cir. 2014); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir.2006), and, pursuant to Local Rule 56.2, plaintiff received notice of the requirements of the local rules and consequences for not following them when defendants filed for summary judgment. [Dkt. # 85].

Local Rule 56.1 requires a party seeking summary judgment to include with its motion "a statement of material facts as to which the ... party contends there is no genuine issue and that entitle the ... party to a judgment as a matter of law." Local Rule 56.1(a)(3); *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008). Each paragraph must refer to the "affidavits, parts of the record, and other supporting materials" that substantiate the asserted facts. Local Rule 56.1(a)(3); *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005).

The party opposing summary judgment must then respond to the movant's statement of proposed material facts; that response must contain both "a response to each numbered paragraph in the moving party's statement," Local Rule 56.1(b)(3)(B), and a separate statement "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment," Local Rule 56.1(b)(3)(C); *Ciomber*, 527 F.3d at 643. Again, each response, and each asserted fact, must be supported with a reference to the record. Local Rule 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Bay Area Business Council, Inc.*, 423 F.3d at 633.

The district court is entitled to enforce strict compliance with its local rules regarding summary judgment motions. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011); *Schmidt v. Eagle Waste & Recycling, Inc.,* 599 F.3d 626, 630 (7th Cir.2010). Responses and facts

4

that are not set out and appropriately supported in an opponent's Rule 56.1 response will not be considered, *see Shaffer v. American Medical Association*, 662 F.3d 439, 442 (7th Cir. 2011)(court need not consider any fact not contained in the parties' Rule 56.1 statements); *Bay Area Business Council.*, 423 F.3d at 633 (court properly disregarded affidavits not referenced in 56.1 submission), and as a result, the movant's properly supported facts will be deemed admitted. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).

## B.

The plaintiff was an administrative assistant in the Cook County Department of Corrections' records department. As such, she was subject to Sheriff's General Order 3.26.2+A of the Civilian Drug-Free Workplace Policy, which states:

> mandatory drug testing shall be conducted when a civilian employee is returning to the Department after an absence of 15 days or more with the exception of vacation time, personal time, holiday and compensatory time due days. However if the reason for the absence is medical but other time earned is then used in the alternative the employee will be subject to testing.

[Dkt. #82, ¶ 10]. The General Order further provided that a "[r]efusal to submit to" a drug test or "[f]ailure to cooperate" meant mandatory termination." [Dkt. #82, ¶ 11; Def.Ex. K, at 0304].

Between June 17, 2011 and July 7, 2011, plaintiff tried to use sick leave for the following dates: June 19-21, June 26-30, and July 3-7. When she called in sick for 16 additional days between July 11, 2011 and August 17, 2011, she no longer had sufficient accumulated sick leave and her absences were classified as unauthorized. [Dkt. #82, ¶ 22]. After being off work for medical reasons so much – 15 days or more in a row – the rules required plaintiff to follow certain steps upon her

return on July 8, 2011.[2]  She had to see the County doctor and present a note from her physician releasing her for return to her job. [Dkt. #82, ¶¶ 21, 23].  The County doctor also had to examine her and give her a pass. [Dkt. # 2, ¶¶21, 24].  And, of course, she had to comply with the mandatory drug test required of all those in her situation.

After seeing the County doctor, plaintiff moved on to see Sharon Little, the Cook County Sheriff's Office's personnel manager, at 4 p.m. on July 8th.  During that meeting, Ms. Little handed plaintiff a Drug Testing Notification Form.  [Dkt. #82, ¶27].  Plaintiff does not dispute that she received the form.  (Plaintiff's Statement of Facts, ¶ 1).[3]  Ms. Little says she also told plaintiff that she had to submit to a drug test.  Ms. Little says she went on to tell plaintiff where the drug test would take place, that she had an hour to make it to the drug testing unit, and that they would be waiting for her there. [Dkt. #82, ¶27].  Plaintiff claims that Ms. Little never told her anything, just handed her the forms.  (Plaintiff's Statement of Facts, ¶ 1).  Both Ms. Little and plaintiff signed, dated and wrote the time – 4:05 p.m. – on the Drug Testing Notification Form,  and Ms. Little gave plaintiff a copy to present to the Drug Testing Unit. [Dkt. #82, ¶ 28].  However, under plaintiff's version, nothing was said by anyone. Plaintiff then left, and Ms. Little called the Drug Testing Unit to let them know plaintiff was on the way. [Dkt. #82, ¶ 29].

---

[2] Plaintiff complains that defendants are adding weekend days into the mix to arrive at 15. (Plaintiff's Statement of Facts, ¶¶ 22, 23, 26, 33).  But the attendance records she submits show she was absent the 5 weekdays of the week of June 19th, 5 weekdays the week of June 26th, and 5 weekdays the week of July 3rd, for a total of 15 consecutive weekdays, even if weekends are not included. (Plaintiff's Statement of Facts, Ex. B, at 14).  But, in any event, the rule clearly states that if the reason for an absence was medical – and plaintiff does not dispute hers was – even time used other than sick leave time is included.  (Def. Ex. K, at 0305).

[3] Plaintiff complains that, in the past, she had received a written drug testing notice from the County doctor, but did not get one this time.  (Plaintiff's Statement of Facts, ¶ 24).  But, no matter, because she concedes she got a written notice from Ms. Little.

The form was the epitome of simplicity, with "DRUG TESTING NOTIFICATION FORM" in large-type, all-caps, block letter emblazoned at the top. Below that were blocks in which to print the employee's and supervisor's names, and below that were a set of five instructions, the first two being that the employee was selected for a drug test and had to report to screening at 31st and South California Avenue[4], and that the employee had to be there within an hour. Below that were blocks for the supervisor's signature and the employee's signature and time and date. Above the space for the employee's signature it says, "I understand the contents of this form." [Defendants' Ex. K, at 0288]. It is difficult to imagine how one could not notice it was a drug testing notice while taking the time to sign the form and enter the time and date. And while it would seem impossible to have signed the form and averted one's eyes from what was immediately above the signature block, we accept Plaintiff's version of things.

About an hour later, the supervisor of the Drug Testing Unit called Ms. Little and told her plaintiff never arrived. [Dkt. #82, ¶ 29]. Ms. Little called the Records Department to see if plaintiff had gone back there, but she had not. Ms. Little informed the Records Department that plaintiff could not return to work until she had passed the mandatory drug test. [Dkt. #82, ¶ 30]. It turns out that plaintiff went straight home after her meeting with Ms. Little. [Dkt. #82, ¶ 31]. While she was at home, her supervisor, Bernessa Tate, called her and told she could not return to work because she had failed to comply with the mandatory drug test. [Dkt. #82, ¶ 32]; (Plaintiff's Statement of Facts, ¶1). Plaintiff claims this was the first she heard of any drug test, but she also claims that she simply

_____

[4] The facility is just four blocks from the office where plaintiff and Ms. Little were. [Dkt. # 82, ¶ 25].

didn't bother to read the written notice. (Plaintiff's Statement of Facts, ¶ 1).[5]

On July 11th, plaintiff went back to see Ms. Little and explained that she had not shown up for the drug test because she hadn't heard her tell her she had to take a drug test and she didn't know that the test was mandatory if you combined sick leave with other time to get to the 15-day limit. [Dkt. #82-4, at 16; Plaintiff Dep., at 57]. She didn't bother to read the drug testing form Ms. Little gave her and that she signed and dated; she just folded it up and put it in her pocket. [Dkt. #82-4, at 20; Plaintiff Dep., at 49, 72]. Still, at her deposition, plaintiff testified that she had been on extended absences before and had submitted to drug tests as a result, and that she was familiar with the process. [Dkt. #82, ¶ 34; Dkt. #82-4, at 17; Plaintiff Dep., at 61].[6] Indeed, she even submits as

_____

[5] Attempting to discredit Ms. Little's testimony that she gave plaintiff *oral* notice of the test – again, there is absolutely no dispute that she gave her written notice – plaintiff points to Ms. Little's testimony from plaintiff's November 2011 Unemployment Benefits Hearing:

Q: Did you tell her what you were giving her?

Ms. Little: Yes.

Q: And what did you say to her and what did she say to you about that document?

Ms. Little: I gave her the documentation, she signed off on it, then I told her that she needed to report to the Drug Testing Unit and she signed the paperwork and left.

(Plaintiff's Statement of Facts, ¶ 15; Ex. B, at 6; *see also* ¶¶ 27, 28, 31). Plaintiff submits that because Ms. Little said did not say what plaintiff's response was at the time, she is making up the story that she orally informed her of the drug test. (Plaintiff's Statement of Facts, ¶ 15). It's not clear how plaintiff gets from point A to point B on that line of reasoning, especially since Ms. Little clearly testified that she told plaintiff what she was giving her. At other points in plaintiff's submissions, it would seem that plaintiff's theory is that, because Ms. Little's memory was more specific much later on in her affidavit of January 27, 2015, the fabrication was a recent one. But in the affidavit, as in the deposition testimony, Ms. Little says nothing about any response plaintiff might have had to the notice of a drug test either. (Defendants' Ex. C, Little Aff., ¶ 8).

[6] Plaintiff asserts that her "first clear understanding" of this process came during her deposition. (Plaintiff's Statement of Facts, ¶ 10). But her deposition testimony indicates that she had this understanding previously. The questions are phrased, "*were* you aware" and "[t]hat *was* your understanding", and plaintiff
(continued...)

evidence the written notice of a drug test that she received in April 2011, which she read and complied with. (Plaintiff's Statement of Facts, Ex. A, at 15).

Despite her failure to comply with testing on July 8th, plaintiff was allowed to return to work after she passed a drug test on July 11th. But the reprieve was short-lived. On July 13th, the supervisor of the Drug Testing Unit, Peggyann Hynes, sent a complaint to the Office of Professional Review informing them that plaintiff had failed to show up for a mandatory drug test on the 8th. [Dkt. # 82, ¶ 35]. Patrick Fitzgerald was assigned to investigate, and along the way he interviewed plaintiff and Ms. Little, and acquainted himself with the pertinent documents like the drug testing notice plaintiff had signed and the complaint from Ms. Hynes. [Dkt. # 82, ¶ 36]. His interview with plaintiff took place on July 26th, and plaintiff, who was a member of the Service Employees International Union ("SEIU"), had her union steward with her. [Dkt. # 82, ¶ 38]. Richard Ellitch, another investigator, was also at the interview although he had played no part in the investigation prior to that. [Dkt. # 82, ¶ 39].

Prior to the interview, plaintiff received a written notice of the charges against her, informing her that she could furnish the names of witnesses who would testify in her behalf, and of her right to counsel and her right to postpone the interview in order to retain counsel. [Dkt. # 82, ¶¶ 40-43]. Plaintiff signed these notices, and testified at her deposition that she read them and understood them.

---

[6](...continued)
answers affirmatively throughout that line of questioning. (Plaintiff. Dep., at 36). Later in her deposition, plaintiff testified that, at the time of her return to work, she didn't know that she had to submit to a drug test if she combined sick and personal leave for a 15-day medical absence. (Plaintiff Dep., at 57). But, when she was given the rules to read during her testimony, she said it was clear. (Plaintiff Dep., at 58). And, as plaintiff concedes, she was obligated to be familiar with the rules and policy as a Sheriff's Office employee. (Plaintiff Dep., at 30). If she simply didn't read it until her deposition – which seems to be the case as she quickly understood it then – that obviously was her choice.

[Dkt. # 82, ¶¶ 40-42; Dkt. # 82-4, at 22; Plaintiff Dep., at 79-81]. She also received a waiver of counsel form, which she signed, indicating she wished to proceed immediately without counsel. [Dkt. # 82, ¶ 42; Dkt. # 82-4, at 22; Plaintiff Dep., at 80-81]. And, Mr. Fitzgerald showed her the drug testing notice that she signed and dated and the complaint from Ms. Hynes.[7]

Mr. Fitzgerald concluded that plaintiff had violated the General Order by failing to show up for an mandatory drug test. [Dkt. # 82, ¶ 49]. He submitted his findings to the Office of Professional Review director, Joseph Ways, who concurred and recommended that plaintiff be terminated. [Dkt. # 82, ¶¶ 50-51]. The recommendation went through command channels and was approved. [Dkt. # 82, ¶ 52]. Plaintiff was finally terminated on August 17th, and she had an exit interview with Rosemarie Nolan and the SEIU vice president. [Dkt. # 82, ¶ 54]. Following the exit interview, plaintiff signed the exit interview form under protest, as she said she would be filing a grievance. [Dkt. # 82, ¶ 56].

SEIU filed a grievance on plaintiff's behalf pursuant to the Collective Bargaining Agreement. The union argued that : a) the Sheriff's Office failed to follow the Civilian Drug-Free Workplace Policy; b) the Sheriff's Office failed to follow progressive discipline or demonstrate just cause for plaintiff's termination and; c) the drug test plaintiff took on July 11, 2011 yielded a negative result for illegal drugs. [Dkt. # 82, ¶ 61]. At the third step of the grievance process, the grievance hearing

_____

[7] Incredibly, plaintiff submits, without citation to any supporting evidence that Mr. "Fitzgerald never presented [her] with any documents." (Plaintiff's Statement of Facts, ¶ 44). As for the clearly notice of charges, notice of administrative rights, and attorney waiver, plaintiff *signed*. It is, therefore, ridiculous to assert that Mr. Fitzgerald did not present them. As for the complaint and the written drug testing notice, both Mr. Fitzgerald and Mr. Ellitch swore in their affidavits that plaintiff received these documents. (Defendants' Exs. F, ¶ 16; G, ¶ 15). In her statement of facts, plaintiff cites to no evidence that Mr. Fitzgerald did not provide her with any documents; in fact, she cites to the very paragraph of his affidavit in which he says he gave her – and she signed – the notice of charges, notice of administrative rights, and attorney waiver. (Plaintiff's Statement of Facts, ¶ 44, Ex. D, at 35, line 15).

– presided over by the director of labor affairs for the Cook County Sheriff's Office – plaintiff acknowledged that she made an error and signed the drug testing notification form without reading it. Ms. Little contradicted this by stating that plaintiff had reviewed the form in front of her. [Dkt. # 82, ¶ 63; Dkt. # 82-15, at 2]. The director denied the grievance, concluding that there had been no violation of the CBA. [Dkt. # 82, ¶ 64; Dkt. # 82-15, at 3].

The final step of the grievance process was independent arbitration. [Dkt. # 82, ¶ 68]. The arbitration hearing took place on October 5, 2012, in front of Arbitrator Edwin H. Benn. Plaintiff was represented by an SEIU attorney, Daniel Kuehnert. The burden was on the Sheriff's Office to not only demonstrate that plaintiff engaged in misconduct, but also that the level of discipline was appropriate. [Dkt. # 82, ¶ 69]. During the hearing Ms. Little, Ms. Hynes, and the plaintiff testified, documents were entered into evidence, and both the Sheriff's Office and plaintiff's union counsel presented arguments. [Dkt. # 82, ¶ 70].

Arbitrator Benn issued his 14-page Opinion and Award on October 29, 2012, setting forth the evidence that was presented at the hearing, the burden the Sheriff's Office needed to meet, an analysis as to why the Sheriff's Office had shown that plaintiff had engaged in misconduct, why the level of discipline was appropriate, and why the Union's "well-framed arguments" were not enough to overturn plaintiff's termination. [Dkt. # 82, ¶ 71]. Arbitrator Benn issued his 14-page, carefully reasoned opinion on October 29, 2012 denying plaintiff's grievance. [Dkt. #82, Ex. O]. He concluded that the Civilian Drug-Free Workplace Policy required plaintiff to submit to a mandatory drug test on July 8, 2011, and by not submitting to a drug test on that date she had violated that policy. *Id.* He also found that the Civilian Drug-Free Workplace Policy was clear that termination was the consequence for any employee that failed to obey an order to take a drug test and, despite

"the strong efforts of the Union on the Grievant's behalf," he found just cause for plaintiff's termination and denied her grievance. *Id.*

The arbitrator thoroughly reviewed the conflicting testimony between plaintiff and Ms. Little regarding whether plaintiff was told that she had to take an immediate drug test at the drug testing unit and that they were awaiting her arrival. *Id*. at p. 5, *et seq.* Plaintiff, of course, told a different story, denying that she was given notification and instructions that she had to take a drug test that day. The arbitrator also discussed plaintiff's claim that she never noticed that any of the paperwork indicated that she had to take a drug test. *Id*. at 60.

The arbitrator made a well-reasoned credibility determination regarding who was telling the truth, Ms. Little or plaintiff. He found that "the evidence shows" that Ms. Little "specifically told" plaintiff that she had one hour to go to the drug testing unit and take the drug test, and that "they were waiting on her... at the drug trailer... [and] she had to go to the Drug Testing Unit." The arbitrator went on to find that plaintiff's signature appears on the Drug Testing Notification Form "right below the language 'I understand the contents of this form.'" The arbitrator found that the Drug Testing Notification Form was "very clear" in its instructions in this regard. *Id.* at 8-9. The arbitrator concluded his careful credibility assessment by noting Ms. Little's demeanor and good recall of events and the absence of any apparent motive to fabricate the testimony against plaintiff, who, he emphasized, had been through drug testing before. He noted that the instructions on the form could not have been plainer in telling plaintiff she had one hour from the time she signed the form at 4:05 p.m. before she took the test. Given the overwhelming evidence, the arbitrator understandably concluded that plaintiff's "denial that Little instructed her to take the drug test cannot be credited." *Id.*.

## II.
## ANALYSIS
## A.

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that the defendants are entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); *Covell v. Menkis*, 595 F.3d 673, 675 (7th Cir. 2010). While we construe all facts and draw all reasonable inferences in favor of the nonmoving party, this favor does not extend to drawing inferences that are supported by only speculation or conjecture. *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)

Accordingly, the nonmoving party must do more than raise some metaphysical doubt as to the material facts; she must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact only exists if there is sufficient evidence favoring the nonmoving party to permit a jury to return a verdict for that party. *Id.*

Plaintiff's complaints about the due process the defendants afforded her in connection with her termination are these: while she received written notice that she had to go for a drug test, she did not receive oral notice; that she did not receive notice that an investigation was being conducted until her pretermination hearing on July 26, 2011; and that Mr. Fitzgerald was biased because he had been conducting the investigation and by the time of her interview with him, her termination was a *fait accompli*. She has several other gripes with what transpired between the time she pocketed the drug testing notice without reading it and the conclusion of her independent arbitration hearing but, for the most part, these do amount to real arguments about deprivation of due process. Nevertheless, as plaintiff is proceeding *pro se*, we address some of her arguments regarding what happened to her before her right to due process right "clicked in," so to speak, and her complaints about certain things

that may or may not have occurred along the way.

**B.**

This all began with plaintiff's extended leave of absence, and it has been noted that, despite the assertions to the contrary, her absentee record reflects that she was off for 15 consecutive work days. *Supra* at 3 n.2. Even so, an argument along the lines of the defendants sending plaintiff for mandatory drug testing after an absence of less that 15 days is an argument that the defendants did not adhere to their own rules, which doesn't amount to a due process violation. *Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 715 (7ᵗʰ Cir. 2014). What is more, even if defendants' addition had been wrong, plaintiff had several pre- and post-termination opportunities to address this. There is no indication she ever tried. And she cannot transmute her own failures into a due process violation by the defendants.

Plaintiff also says that she did not know that the 15-day limit included both sick leave and other leave if the reason for the absence was medical. But, as also already noted, when she read the policy at her deposition, she testified that she had no trouble understanding it. She simply had not read it before, even though she acknowledges that it was her responsibility to know the rules. And, in any event, it really doesn't matter because she concedes she received a written notice – a clearly written notice, as already discussed – that she had to report for a drug test before she could return to work.

Still, the plaintiff insists she has a problem with the notice she received. She complains that while she received a written notice that she had to undergo a drug test, she did not receive oral notice at that time. But as noted above, this is a contention that the arbitrator rejected after careful analysis. Due process does not require that that credibility assessment be jettisoned in favor of one that

14

Plaintiff finds congenial to her story.

Plaintiff adds to this argument the unsupported charge that Ms. Little lied throughout the grievance process when she said she told plaintiff she had to take a drug test in addition to giving her written notice – although she does not make any attempt to explain what this has to do with the due process argument. But that's not what the arbitrator found after hearing the witnesses, analyzing in a common sense fashion the evidence, and having had the opportunity to observe the witnesses. *Jones v. Astrue,* 623 F.3d 1155,1160 (7th Cir.2010). *Compare Ashcraft v. Tennessee,* 322 U.S. 143 (1944) (Jackson, J., dissenting) ("A few minutes observation of the parties in the courtroom is more informing than reams of cold record."). Particular deference is given to credibility determinations, which will not be disturbed unless "completely without foundation." *United States v. Salyers,* 160 F.3d 1152, 1162 (7th Cir.1998), citing *United States v. Ferguson,* 35 F.3d 327, 333 (7th Cir.1994). Unless the fact finder has credited testimony that is contrary to the laws of nature or so internally inconsistent or implausible on its face that no reasonable fact finder would credit it, courts of appeals defer to the trial court's finding. *See United States v. Collins,* 604 F.3d 481, 486 (7th Cir.2010). There is nothing in this case that requires a different rule to be applied.

The fact that Ms. Little's affidavit may have been slightly more detailed than her deposition testimony – according to the plaintiff – doesn't undermine her credibility in the least. Deposition testimony happens in real time, and a deponent's responses are a function of the questions asked by the examiner. If the plaintiff's attorney who questioned Ms. Little chose not to ask questions that would have called for factually detailed answers – there isn't much detail involved in the encounter in any event – Ms. Little can hardly be faulted for the understandably limited questioning. *See* n. 5 *supra.* Any lack of detail is a function not of Ms. Little's fidelity to the truth, but of her lawyer's

strategic decisions, the consequences of which are binding on her. Moreover, one compiles an affidavit at her leisure and without the pressure of staring down the barrel of an inquisitor. Finally, there is nothing in Ms. Little's affidavit that contradicts anything she said at her deposition.

But, most importantly, none of this matters. Due process doesn't guarantee who wins otherwise every disappointed litigant would have a Constitutional claim. That would be silly. The great thing about a written drug test notice is that the employee signs and acknowledges receiving is that the recipient can't come back and say she didn't have any notice she had to take a drug test. And, on the other side, it protects an employee from a situation where, in the absence of written notice, a supervisor can lie about having provided the employee oral notice. It bears repeating that plaintiff does not claim that Ms. Little prevented her from reading the notice, obscured the notice while she signed (of course plaintiff could have read it immediately thereafter), or told her the notice she was signing was something else entirely. And, having been sent for drug testing before, plaintiff would not be confused as to what a drug testing notice was or meant if she glanced at it while signing it. Accepting plaintiff's story at face value, she has no one to blame but herself for folding it up and stuffing it in her pocket. Decisions have consequences. *Lynch, Inc. v. SamataMason Inc.,* 279 F.3d 487, 490-492 (7th Cir.2002)

## C.

That brings us to the due process claim. Defendants don't dispute that plaintiff had a property interest in her job, as she was a member of a union with a collective bargaining agreement. *See Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). As such, the only issue is whether she was afforded due process in connection with her termination. To prove a violation of his procedural due process rights, a plaintiff must show that the State deprived her of a protected liberty or property

16

interest and that the deprivation occurred without adequate due process. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972); *Salas v. Wisconsin Dept. of Corrections*, 493 F.3d 913, 926-27 (7th Cir. 2007).

The inquiry breaks down into pre- and post-termination proceedings. The scope of the right to a pretermination process is dependent upon the adequacy of post-termination remedies. *Carmody v. Board of Trustees of University of Illinois*, 747 F.3d 470, 474 (7th Cir. 2014); *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). Due process "requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment . . . ." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). When adequate post-termination proceedings exist, a pretermination hearing need only provide "an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545-46.

In other words, if "'there is the opportunity for full administrative review once a termination decision has been reached, the pre-termination hearing can be somewhat truncated.'" *Michalowicz*, 528 F.3d at 534. In its truncated form, a pretermination "hearing" need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his or her side of the story. *Gilbert v. Homar*, 520 U.S. 924, 929 (1997); *Loudermill*, 470 U.S. at 546; *Carmody*, 747 F.3d at 474; *Michalowicz*, 528 F.3d at 537. The idea is that there be "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action..." *Loudermill*, 470 U.S. at 545-46; *Gilbert*, 520 U.S. at 929.

17

**1.**

The pretermination "hearing" in this case consisted of plaintiff, accompanied by her union steward, sitting down for an interview with Mr. Fitzgerald, who had been assigned to investigate her case. Mr. Ellitch also sat in, although he had not been assigned to plaintiff's case. Before the interview, plaintiff was given a written notice of the charge that she had failed to comply with the drug testing policy, written notice of her administrative rights, and a waiver of counsel form. As already noted, she signed and dated these notices, indicating that she understood what was going on and what would transpire. She does not contend otherwise and any such argument would be still born. She has never contended otherwise.

Mr. Fitzgerald showed plaintiff the complaint register from Ms. Tate and the drug testing notice that plaintiff had signed during her meeting with Ms. Little. (Defendants' Ex. F, ¶ 16; Ex. G, ¶ 15); *see also supra* at 7 n.7. During the interview, plaintiff told the story we are now familiar with: Ms. Little gave her written notice of her mandatory drug test but not oral notice, and although plaintiff signed and dated the notice, she said she stuffed it in her pocket without reading it. As plaintiff concedes, "[t]hey allowed [her] to tell [her] story." (Plaintiff's Dep., at 82). Mr. Fitzgerald typed up her statement, and she signed it, making only a single typographical change. Mr. Fitzgerald later concluded that plaintiff had violated the drug testing policy and submitted his findings to Mr. Ways.

It is beyond debate that plaintiff had notice of the charge against her, was shown the evidence supporting that charge, and had an opportunity to tell her side of the story. That's all that is required in these circumstances. *Gilbert*, 520 U.S. at 929; *Loudermill*, 470 U.S. at 546; *Carmody*, 747 F.3d at 474; *Michalowicz*, 528 F.3d at 537. But plaintiff has some issues with the process. She complains

that she received these notices just prior to the interview, and that she did know that an investigation had been ongoing since she failed to show up for her drug test. She says if she had had more time to consider things, she "could have made a better decision on her Administrative rights." (Plaintiff's Statement of Facts, ¶ 42). But it is undisputed that, had plaintiff not wished to proceed at that time, the interview would have been postponed to a later date. [Dkt. # 82, ¶ 43]; (Plaintiff's Statement of Facts, ¶ 43). And it is not clear what more plaintiff could have accomplished had she done so. The charge against her was singularly uncomplicated, and it is undisputed that she claims she failed to read the notice despite having signed it, and that she failed to show up for her drug test. Under such circumstances, even contemporaneous notice without the opportunity for postponement would satisfy the requirements of due process. *See Staples v. City of Milwaukee*, 142 F.3d 383, 387 (7th Cir. 1998)(". . . we would not want to say that contemporaneous notice at a hearing could never satisfy due process. Whether it does or not will depend on what has taken place before the hearing, on the nature of the violation the employee is charged with, and on the risk of error if the employee does not have some advance notice of the hearing.").

Plaintiff explains that her negative drug test on July 11, 2011, gave her a "false sense of security" and, presumably, this is why she chose to proceed with the interview without delay. (Plaintiff's Statement of Facts, ¶ 43). She doesn't indicate what she would have done with the extra time or how it might have helped her. Indeed, it's not exactly clear what she is driving at because the notice of charges she signed clearly informs her that she failed to comply with drug testing policy. (Defendants' Ex. K, at 0319). Moreover, the typed statement, which she signed, recounting the story she told at the interview says nothing about the July 11 drug test. (Defendants' Ex. K, at 0319). If she thought the negative test trumped her failure to show up for the initial test, she surely

would have made that a part of her statement.

Plaintiff also asserts that the pretermination process was not fair because Mr. Fitzgerald had been the one doing the investigating. (Plaintiff's Statement of Facts, ¶¶ 38, 41). But the fact that Mr. Fitzgerald was conducting the investigation does not amount to bias against the plaintiff. *See Staples v. City of Milwaukee*, 142 F.3d 383, 387 (7th Cir. 1998)("... [plaintiff] must have something more than the fact that [the same individual] was involved in both the investigation and adjudication of the dispute."); *Perotti v. Marberry*, 355 Fed.Appx. 39, 43 (7th Cir. 2009)("A hearing officer is not automatically deemed biased, however, simply because he adjudicated or was involved in a previous disciplinary charge . . . .").[8]

Finally, plaintiff ascribes great import to the fact that, on the decision to terminate her, Mr. Ways scribbled "No Loudermill," as in "no *Loudermill* hearing." (Plaintiff's Statement of Facts, ¶ 8). Seemingly, plaintiff takes this as a demonstration of the intent to deprive her of due process. But as we have seen, nothing of the sort was visited upon her because she had notice of the charge against her and a full and fair opportunity to tell her story, as she admitted at her deposition. Most likely this jotting is nothing more than a reference to the fact that, given the extensive post-termination process that would be due plaintiff as an SEIU union member – *see infra* at 21, – no full-blown, pre-termination *Loudermill* hearing was called for.

**2.**

The post-termination process was certainly adequate as well. As a member of SEIU, the

---

[8] Plaintiff also contends that her previous disciplinary record played a role in her termination and that the information in that record was inaccurate. (Plaintiff's Statement of Facts, ¶ 38). But there is no indication that plaintiff's past disciplinary record played any role in Mr. Fitzgerald's conclusion that she violated drug testing policy. (Defendants' Ex. K, at 0256-0257).

plaintiff availed herself of a multi-tiered grievance process that culminated in a hearing before an independent arbitrator. At the penultimate step in this process, a grievance hearing, plaintiff had union representation and had the opportunity to present evidence. The decision maker at that level determined that plaintiff violated the drug testing policy, and that termination was the appropriate discipline.

From there, the plaintiff appealed and had *another* hearing before an independent arbitrator. This time she was represented by an attorney and, again, had the chance to put on evidence and witnesses. At this hearing, it was the Sheriff's Office's burden to prove that plaintiff violated the policy and that the discipline was appropriate. The arbitrator determined she did and that it was, explaining his conclusions and evaluation of the evidence in a 14-page opinion, in which he noted that plaintiff's representation made "strong efforts" on her behalf. Still, he concluded that there was just cause for plaintiff's termination.

These procedures gave the plaintiff all the process to which she was due. She "had the opportunity to present evidence and arguments concerning" her failure to show up for her mandatory drug test, and "had more than sufficient notice and an opportunity to be heard . . . ." *Bodenstab v. County of Cook*, 569 F.3d 651, 664 (7th Cir. 2009). *See also Powers v. Richards*, 549 F.3d 505, 512 (7th Cir. 2008)(plaintiff had "the right to a full hearing—where he was represented by counsel and allowed to conduct discovery, present evidence, and cross-examine witnesses—and that [s]he took full advantage of it."). Moreover, the Seventh Circuit has made it clear that grievance and arbitration procedures typically satisfy the requirements of post-termination due process. *Griffin v. Bennett*, 204 Fed.Appx. 565, 568-569 (7th Cir. 2006)("Moreover, our precedents do not suggest that public employees are entitled to post-termination relief apart from what is provided for in their collective

bargaining agreements."); *Catlett v. Woodfin*, 13 Fed.Appx. 412, 416 (7th Cir. 2001); *Chaney v. Suburban Bus Div. of the Reg'l Transp. Auth.*, 52 F.3d 623, 630 (7th Cir.1995). There is nothing about the post-termination proceedings in this case that suggest they should be regarded any differently.

Plaintiff's problems with her post-termination proceedings aren't really arguments about whether she was afforded due process, they are more along the lines of an appeal of the two proceedings, one an independent arbitration, in which she was found to have violated policy and her termination was upheld. But, these arguments will be addressed in any event. She says the conclusions of the grievance hearing and the independent arbitrator are both wrong because she never refused to take a drug test or failed to comply with policy, she should have had an opportunity to "recant", that Ms. Little lied about giving her oral notice of the drug test. And she presses the issue that, it does not seem fair that, because she did not *fail* a drug test, she should be treated as though she had by being terminated.

Touching on this final point first, there is good reason that refusal or failure to take a test is treated similarly to failing a test. Employees who refuse or fail to take a drug test can prompt others to act similarly, and that would undermine the Sheriff's Office's entire drug-free workplace policy. *See Pollock v. Department of Navy*, 369 Fed.Appx. 133, 138 (Fed. Cir. 2010). That's why failure to show up is as bad in its own way as failing a test.

Next, plaintiff seems to argue that, technically, she didn't "refus[e] to submit to testing" or "fail[] to cooperate", she just "made a mistake" and didn't show up and, so, she could not have been terminated under the drug testing policy. (Plaintiff's Statement of Facts, ¶¶ 1, 36). But the fact is, she had notice of the drug test and chose not go. That's refusing to cooperate. A "pocket veto" is

still a veto.

Changing course, plaintiff looks to the text of General Order 3.27 which states that, if an employee refuses to report to drug testing, the assistant executive director or external operations or their designate must order the employee to report in front of an IAD investigator and union steward. (Defendants' Ex. Q, at B.5). Plaintiff complains that no one – in this case it seems that the designate would have been Ms. Tate – followed this rule. But, as the defendants point out, this argument is off target for two reason. One, the rule plaintiff cites applies to *random* drug testing, not the *mandatory* testing required after extended absences for medical reasons. And, two, plaintiff did not tell anyone she was refusing to take the test, she simply never showed up. Even if the procedure set out in 3.27(B) did apply to mandatory testing, it covers a situation where the employee says she won't be taking the drug test. Clearly, it is inapplicable to plaintiff's situation. Plaintiff's reliance on Mr. Fitzgerald testifying that if plaintiff had refused to take the test under 3.27 she would have been allowed to recant (plaintiff's Statement of Facts, ¶ 13) is also unavailing. Again, General Order 3.27(B) does not apply because plaintiff simply ignored the notice to appear for testing, went home, and never showed up. Mr. Fitzgerald was not testifying that this procedure applied; he was being led down a hypothetical path by plaintiff's counsel. (Plaintiff' Statement of Facts, Ex. B, at 3).[9]

Then there is Ms. Little. Plaintiff does not have good things to say about the characters in her termination play, but she reserves her worst for Ms. Little. As plaintiff sees it, Ms. Little was out to get her, orchestrating a "witch hunt," and lying throughout the proceedings to achieve her ends. This is an argument that goes nowhere given the extensive process plaintiff received in this

---

[9] The testimony plaintiff is referring to did not occur at any of the proceedings she attacks in her lawsuit, but at her unemployment benefits hearing some months after the final arbitration proceeding on her termination.

case. As plaintiff grudgingly admits, "everyone looked at [Ms. Little] as a credible witness . . . ." (Plaintiff's Memorandum of law, at 2). Two separate reviewers, one an independent arbitrator, found Ms. Little credible. Second of all, as noted above, it's difficult to follow the path that plaintiff cites to show Ms. Little lied to the conclusion that she did, and even more difficult to see how the point plaintiff claims she lied about had or would have had any affect on the final result in plaintiff's post-termination proceedings.

Plaintiff first claims Ms. Little was not sure if she "was off work for 15 days or more than 15 days." (Plaintiff's Memorandum of Law, at 2). But whether it was 15 days or more than 15 is of no consequence, as the rule applies to "an absence of 15 days or more." *See supra*, at 3; (Defendants' Ex. K, at 0305). In other words, there is not a disputed material issue of fact. Second, plaintiff provides no citation to any part of the record where Ms. Little was "confused" about whether plaintiff had been off 15 days or more that 15 days. (Plaintiff's Memorandum of Law, at 2, 3). She says only that she "has her Arbitration Transcript where . . . in the beginning she say I was off work for 15 days but later she changes it to more than 15 days." (Plaintiff's Memorandum of Law, at 3). Without proper citation, *see Bay Area Business Council, Inc.*, 423 F.3d at 633; *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 817-18 (7th Cir. 2004), the only testimony we can find on this topic is at plaintiff's exhibit B, at 25, where Ms. Little says that plaintiff had been "off for a set amount of time . . . ." It may well be, that somewhere in the record, or in plaintiff's recollection of the record, Ms. Little used the phrases "15 days" and "more than 15 days" interchangeably – defendants do at one point [Dkt. # 82, ¶¶ 10, 26), but, again, given the wording of the rule, it makes no difference and is so slight an error that it could hardly be said to detract form one's credibility.

Plaintiff's other basis for attacking Ms. Little's credibility was addressed *supra* at 5, n.5. The

fact that she might have provided a bit more detail in her affidavit – if it can even be said that she did – than she did in her hearing testimony is of no consequence here. *Cf. Bell v. Prefix, Inc.*, 321 Fed.Appx. 423, 427 (6th Cir. 2009)("While the affidavits are more detailed than the deposition testimony on many points, they merely expand on areas that were left open or were underdeveloped in the deposition. Therefore, the affidavits were proper and we consider them."); *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999)("The fact that [individual's] deposition testimony does not identify a specific time or date . . . concerning the grievance does not render his subsequent [more detailed] affidavit testimony inconsistent or revised.').

Clearly, the plaintiff has failed to establish that there is a genuine issue of material fact that precludes summary judgment in favor of the defendants. She has not shown that she suffered any deprivation of her right to due process either pre- or post-termination. All she has shown is that she chose to ignore a notice that she had to report for mandatory drug testing and failed to show up. She calls this a mistake that she feels she ought not to have been fired for. She seems to confuse her general sense of what seems fair to her with a violation of her due process rights. But the two are not one and the same. People are terminated, properly so, for mistakes all the time, and that does not equate to their constitutional rights being violated. One can certainly understand (and perhaps even sympathize with) the plaintiff's desire to turn the clock back to just before she pocketed her drug test notice and failed to appear within the hour for the mandatory drug test. But that desire isn't enough to stave off summary judgment.

**3.**

Plaintiff also charges the individual defendants with violating due process. But an individual cannot be held personally liable under 42 U.S.C. §1983 unless he or she caused or participated in

a constitutional deprivation. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kelly v. Municipal Courts of Marion County, Ind*., 97 F.3d 902, 909 (7th Cir. 1996). As plaintiff cannot show she was deprived of due process, summary judgment is appropriate in favor of the individual defendants as well.

## CONCLUSION

In the final analysis, plaintiff's argument is really no more than that she is telling the truth, Ms. Little lied, and it is unfair that she lost her job. But "procedural due process" neither "guarantee[s] a particular result," *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1295 (11th Cir. 2005), nor does it guarantee that there will be no incorrect results. *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992). The defendants' motion for summary judgment [Dkt. # 81] is GRANTED.

By: _____
UNITED STATES MAGISTRATE JUDGE

DATE: May 5, 2015